UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JAMIE B. RATLIFF** | ) | **CASE NO. 1:08-cv-2388** |
| | ) | |
| **PLAINTIFF,** | ) | **JUDGE SARA LIOI** |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| **MICHAEL ASTRUE,** | ) | **AND ORDER** |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

This matter is a civil action for judicial review of an administrative action denying disability insurance benefits to Plaintiff Jamie B. Ratliff[1] ("Ratliff") pursuant to 42 U.S.C. § 405(g). Pursuant to Local Rule 72.2(b), this matter was automatically referred to a Magistrate Judge for a Report and Recommendation, and on November 18, 2009, Magistrate Judge David S. Perelman submitted his Report and Recommendation and recommended that this Court reverse the decision of the Administrative Law Judge ("ALJ") denying Ratliff's claim for disability benefits and enter final judgment in Ratliff's favor finding she is entitled to an award of disability insurance benefits. (Doc. No. 17.) Defendant Commissioner of Social Security Michael Astrue ("Commissioner") filed Objections to the Magistrate Judge's Report and Recommendation on December 4, 2009. (Doc. No. 18.) Ratliff filed a reply. (Doc. No. 19.)

Upon *de novo* review of those portions of the Report and Recommendation to which the Commissioner has made objection, this Court hereby **ADOPTS IN PART** the Report and Recommendation of the Magistrate Judge. The decision of the ALJ, which has become the final decision of the Commissioner pursuant to 20 C.F.R. § 404.981, is **REVERSED** and this matter is **REMANDED** with instructions as set forth below.

---

[1] Erroneously identified as James B. Ratliff in the Magistrate Judge's R&R.

**I.      BACKGROUND**

This Court's review of the Magistrate Judge's Report and Recommendation is governed by 28 U.S.C. § 636(b), which requires a *de novo* decision as to those portions of the document to which objection is made. Here, the Commissioner has objected only to that portion of the Report and Recommendation relating to the treatment of the opinion of Dr. Samer Alamir by the ALJ and the appropriate disposition of this case. Therefore, the remainder of the Report and Recommendation, including its statement of factual and procedural history, is hereby accepted as written. Thus, the Court will only provide a brief review of the facts and procedural history sufficient to adequately frame the issues presented in the Commissioner's objections.

After reviewing the medical evidence in the record and the testimony presented during the administrative hearings, the ALJ found that Ratliff suffered from severe impairments due to attention deficit hyperactivity disorder and bipolar disorder, but also found that Ratliff has the residual functional capacity ("RFC") to perform work activity at all exertional levels. (Tr. at p. 20 ¶ 3, p. 22 ¶ 5.) While the ALJ found Ratliff unable to perform any past relevant work (Tr. at p. 25 ¶ 6), he concluded that, considering Ratliff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Ratliff can perform. (Tr. at p. 26 ¶ 10.) Therefore, the ALJ found that Ratliff has not been under a disability as defined in the Social Security Act. (Tr. at p. 27 ¶ 11.) The final decision of the Commissioner affirming the termination of benefits is before this Court pursuant to 42 U.S.C. § 405(g).

At issue is the question of whether the ALJ's decision gave the appropriate weight to the testimony of Ratliff's treating psychiatrist, Dr. Samer Alamir, in determining her RFC to perform work activity. Because this Court finds that the decision fails to meet the requirements of 20 C.F.R. § 404.1527, the question cannot be answered in the affirmative.

2

## II. DISCUSSION

### A. Dr. Alamir's Opinions Concerning Ratliff's Condition

"A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (citing 20 C.F.R. § 404.1502). In this case, Dr. Alamir began seeing Ratliff in 2003 and he and his staff continued to treat her through at least December 2006. Indeed, neither party contests the ALJ's characterization of Dr. Alamir as a "treating source."

Dr. Alamir's first began treating Ratliff in mid-2003. During the course of their relationship, Dr. Alamir twice filled out "Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment" forms (hereinafter referred to as the "Medical Source Statement"). (Exh. 3F, Dec. 22, 2004; Exh. 11F, Dec. 8, 2006.) These forms required Dr. Alamir to assess Ratliff's mental ability to do basic work activity according to the four criteria in Social Security Administration regulations. The most severe assessment, "markedly limited," is defined therein as "[a]n impairment which precludes the individual's ability to function independently, appropriately, and effectively in the designated area on a regular and sustained basis, *i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule." A separate portion of the form required Dr. Alamir to determine whether Ratliff had a "substantial loss" of ability in four different areas "generally required by competitive, remunerative, unskilled work" on a sustained basis. As defined by the form, a substantial loss in any one of the four different areas "will severely limit or substantially erode the unskilled occupational base and would warrant or justify a finding of disability."

In his 2004 assessment, Dr. Alamir rated Ratliff as markedly limited in five (of twenty) evaluation areas.[2] Under the "substantial loss" section, Dr. Alamir indicated Ratliff had a substantial loss of "ability to understand, remember, and carry out simple instructions"; "ability to make judgments that are commensurate with the functions of unskilled work, *i.e.*, simple work-related decisions"; "ability to respond appropriately to supervision, co-workers and usual work situations"; and "ability to deal with changes in a routine work setting." (Exh. 3F.)

In his 2006 assessment, Dr. Alamir found Ratliff's condition had worsened, and rated Ratliff as markedly limited in eleven (of twenty) evaluation areas. Dr. Alamir echoed his 2004 assessments as to the substantial loss portion of the form.

B.  **The Regulations Concerning Treating Source Opinions**

"The treating physician rule[3] occupies a special place in social security cases; indeed, treating physicians are 'likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 656 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). "If the opinion of a treating source is not

---

[2] The specific areas included: (5) the ability to carry out detailed instructions; (9) the ability to work in coordination with or proximity to others without being unduly distracted by them; (11) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (15) the ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and (20) the ability to set realistic goals or to make plans independently of others.

[3] Interchangeably referred to by courts and the Social Security Administration as the "treating source rule."

4

accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion." *Id.*

Section 404.1527(d)(2) also contains a clear procedural requirement: "We will always give *good reasons* in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." *Id.* (emphasis added). A Social Security Ruling[4] explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *5 (1996). "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). The requirement also ensures that the ALJ applies the treating source rule and permits meaningful review of the ALJ's application of the rule. *Id.*

C.  **The ALJ Failed to Adhere to the Requirements of 20 C.F.R. § 404.1527**

As referenced above, Dr. Alamir twice offered opinions via Medical Source Statements, in 2004 and again in 2006. These forms, however, did not constitute the full extent

---

[4] The Social Security Administration defines Social Security Rulings as "a series of *precedential* decisions relating to the programs administered by the SSA and are published under the authority of the Commissioner of Social Security." *See* Social Security Ruling Definition, http://www.socialsecurity.gov/regulations/def-ssr.htm (last visited February 25, 2010) (emphasis in original).

of Dr. Alamir's interactions with Ratliff. Indeed, a careful review of the record indicates that Dr. Alamir began treating Ratliff in 2003. Although *never referenced* by the ALJ's opinion, Ratliff was regularly treated by Dr. Alamir during the relevant time period, and the record reflects at least 14 visits where Dr. Alamir personally made handwritten clinical observations. (Tr. at pp. 203, 209, 213, 222, 260, 268, 279, 284, 294, 297, 298, 301, 303, 304-06.)

In his decision, the ALJ specifically references and describes Dr. Alamir's 2004 Medical Source Statement opinion. (Tr. at pp. 24-25.) After describing Dr. Alamir's opinion as contained therein, the ALJ states, "[i]n early 2005, the claimant reported traveling, attending church and women's group meetings, helping her mother take care of her father because he was ill, and she was looking forward to warmer weather so she could garden outside. (Ex. 4F). Dr. Alamir's determination is not supported by the evidence." (Tr. at p. 25.)

In the next paragraph, the ALJ describes Dr. Alamir's 2006 Medical Source Statement opinion. (Tr. at p. 25.) After describing Dr. Alamir's opinion as contained within that document, the ALJ states, "Dr. Alamir's records revealed in March 2006, the claimant was noncompliant with medications. In April 2006, she was looking for a job. In May 2006, the claimant worked as a volunteer and in November 2006, the claimant was helping her daughter-in-law move to Kansas (Ex. 6F.) Dr. Alamir's opinion is not given weight because it is not supported by the evidence." (Tr. at p. 25.)

The ALJ's decision to give no weight to Dr. Alamir's opinion clearly violates 20 C.F.R. § 404.1527. In fact, given a proper and rigorous review of the evidence, it is possible that Dr. Alamir's opinion might actually be given *controlling* weight. Indeed, an ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with

6

the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544. Here, even assuming, *arguendo*, that the ALJ's decision was intended to address Dr. Alamir's opinions in their entirety, the ALJ made no finding as to whether Dr. Alamir's opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques." The ALJ, rather, rejected Dr. Alamir's opinions because, in his view, they were "not supported by the evidence." Examining this conclusion, the Magistrate Judge disagreed, and stated in his Report and Recommendation:

> Insofar as this Court is able to ascertain from the body of the ALJ's opinion his rejection of Dr. Alamir's conclusion may well be based upon a very selective excerpting of the evidence (otherwise known as fly specking), seizing upon activities she reported engaging in while in the manic phase of bipolar disorder, disregarding the fact that her doing so while in an 'up' period is not at all inconsistent with the existence of a mental impairment of disabling severity.

(Doc. No. 16 at pp. 10-11.) Indeed, the Magistrate Judge held "the ALJ manifested a woeful lack of understanding of the mental impairment of bipolar disorder and substituted his judgment as to the consequences of the plaintiff's bipolar disorder for that of her treating psychiatrist [. . .]," recommended that Dr. Alamir's opinions be given controlling weight, and recommended that the decision of the ALJ be reversed and final judgment be entered in plaintiff's favor entitling here to a disability award. (*Id.*)

Even assuming, *arguendo*, that Dr. Alamir's opinions are in fact inconsistent with "the other substantial evidence in the record," that conclusion only dictates that Dr. Alamir's opinions should not given controlling weight. If, after determining Dr. Alamir's opinion did not warrant controlling weight, the ALJ was required to determine how much weight to give to the opinions by using "a set of factors that guides the weight given to the medical opinion, including treatment relationship, supportability, consistency, specialization, and other factors." *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 372 (6th Cir. 2006) (citing Soc. Sec. Rul. 96-2p, 1996

7

SSR LEXIS 9 at *5 (1996); 20 C.F.R. § 404.1527(d)). It is true that an ALJ may, after applying the factors listed above, afford no weight to a treating source's opinion. *See*, *e.g.*, *McKeehan v. Astrue*, No. 03-137, 2009 U.S. Dist. LEXIS 55333 at *12 (E.D. Ky. June 17, 2009) (finding that a "simply incredible" treating source opinion that "limits the plaintiff to no sitting, standing, or walking [where the plaintiff] is clearly not bedridden" is "an unusual instance of a treating physician opinion being so patently deficient that the ALJ could not possibly credit it"). But these situations are rare. Indeed, a Social Security Ruling instructs:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *4. *See also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) ("in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding.").

Here, the ALJ's opinion is clearly deficient, as it fails to adequately apply the factors established by the regulations. To be certain, the ALJ states in his opinion that "I also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and SSRs 96-2p [. . .]." (Tr. at p. 23.) This lip service to the appropriate authorities, however, is not supported by the written decision, which simply recites Dr. Alamir's opinion and summarily rejects it as "not supported" after citing a few examples of Ratliff's activities that the ALJ determined to be inconsistent with Dr. Alamir's conclusions. Moreover, the brief explanation

8

given by the ALJ for his total discount of Dr. Alamir's opinions falls woefully short of § 404.1527(d)(2)'s requirement that "[w]e will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." *Wilson* instructs that the "good reasons" requirement exists in part to inform claimants, like Ratliff, whose physicians deem them disabled and who then "might be especially bewildered when told by and administrative bureaucracy that she is not [. . .]." *Wilson*, 378 F.3d at 544. This case presents the exact situation to which *Wilson* referred. Ratliff is a claimant who has been treated numerous times over a span of several years by the same doctor, who has continuously monitored her mental well-being and adjusted her medications accordingly, and who has stated his opinion that her condition is disabling. It is not a stretch to imagine she might be "especially bewildered" by the ALJ's unfavorable and unreasoned decision, which summarily discards her long-time psychiatrist's opinion in the span of three sentences citing examples of "inconsistent" behavior. Therefore, this Court **ADOPTS** the portion of the Magistrate Judge's report that recommends the decision of the ALJ be **REVERSED**.

### D.     The ALJ Decision Must be Remanded for Further Proceedings

In his Report and Recommendation, the Magistrate Judge concludes that final judgment should be entered in Ratliff's favor. Here, the Court disagrees, and holds that remand is appropriate. 42 U.S.C. § 405(g) limits judicial review of the denial of a claim for social security benefits to determining whether the proper legal standards were applied and whether the ALJ's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Rogers*, 486 F.3d at 241. If a court concludes that the ALJ improperly applied, or failed to apply, a legal standard, then the court need not address the substantial evidence question. *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994). In this case, the ALJ's failure to adhere the

requirements of § 404.1527 constitutes reversible error and remand is appropriate. *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

This Court is aware that § 405(g) gives it the power to affirm, modify, or reverse the Commissioner's decision with or without a remand to the Commissioner for a rehearing. And this Court is further aware that some courts have exercised this power and have done what the Magistrate Judge here recommends as to the disposition of this case, directed a final judgment in favor of the claimant. *See Donahue v. Halter*, 166 F. Supp. 2d 1143, 1150-1151 (E.D. Mich. 2001) (Plaintiff established a prima facie case of entitlement, and Commissioner failed to show good cause for failure to adduce relevant evidence to deny Plaintiff benefits on two occasions); *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000) (reversing without remand after claimant had two ALJ hearings and ten year delay and "record as a whole indicates that the claimant is disabled and entitled to benefits"); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992) (remanding the case to award benefits where it determined that because of the extensive medical record, it would be "unconscionable to remand this eight year old case to the Secretary for further review"). In this case, however, remand is an appropriate course. Unlike *Morales* and *Randall,* evidence of Ratliff's disability is not overwhelming. Indeed, the State Agency psychologists' assessment is contrary to that conclusion, and while, as stated above, this Court has some doubt as to whether the examples of behavior cited by the ALJ are truly inconsistent with Dr. Alamir's opinion, that determination is more appropriate for the ALJ, who can evaluate the credibility of the claimant

10

and testifying witnesses. Nor is this a case where the ALJ has repeatedly failed to apply the proper legal standards.

Thus, this Court concludes that remand is the appropriate course of action. Upon remand, the ALJ is directed to fully articulate his rationale for accepting or rejecting Dr. Alamir's opinions as controlling, to include discussing whether the behavior exhibited by Ratliff is truly inconsistent with Dr. Alamir's opinions at all. If the ALJ concludes that Dr. Alamir's opinions are not to be given controlling weight, the ALJ is directed to fully apply the factors contained in 20 C.F.R. § 404.1527 to determine the appropriate weight to be given to Dr. Alamir's opinions, and to comprehensively elucidate his reasoning in accordance with the "good reasons" requirement contained therein, all in accordance with this Order and Opinion.

### III. CONCLUSION

For the foregoing reasons, the Report and Recommendation of the Magistrate Judge is **ADOPTED IN PART**. The ALJ's decision denying Plaintiff Jamie Ratliff's application for disability insurance benefits is **REVERSED** and **REMANDED** for reconsideration.

**IT IS SO ORDERED**.

Dated: March 5, 2010

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**